UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LANIE McCANN | * | CIVIL ACTION |
| VERSUS | * | NO. 22-2502 |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES | * | SECTION "H" |
| | * | MAGISTRATE 2 |

\*   \*   \*   \*   \*   \*   \*   \*   \*

### DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Defendant, United States Citizenship and Immigration Services ("USCIS"), through the undersigned Assistant United States Attorney, respectfully submits this opposition to Plaintiff's Motion for Summary Judgment, Rec. Doc. 6.

On August 4, 2022, Plaintiff, Lanie McCann, filed the instant lawsuit pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Rec. Doc. 1. After service was perfected, Defendant timely filed an answer on September 30, 2022. Rec. Doc. 5. The same day Defendant filed its answer, Plaintiff filed the instant motion for summary judgment, setting the same for submission on October 19, 2022. Rec. Doc. 6. While Plaintiff's motion for summary judgment should be denied since there are material facts in dispute, Defendant sought an efficient approach - continue Plaintiff's motion until Defendant fully completed the processing of all documents responsive to Plaintiff's FOIA request and would be able to file a cross-motion for summary judgment. Therefore, Defendant filed a motion for status conference (to discuss an appropriate briefing schedule) and to continue Plaintiff's motion for summary judgment accordingly. Rec.

1

Doc. 7. The Court granted Defendant's motion, setting a status conference for November 3, 2022, and reset Plaintiff's motion for submission on November 2, 2022. Rec. Doc. 10. Despite the Court continuing Plaintiff's motion for summary to the next available submission date, USCIS is still completing the final processing of records responsive to Plaintiff's FOIA request. *See* Exhibit A, Declaration of Cynthia Munita, Associate Center Director and Chief FOIA Officer in the Freedom of Information and Privacy Act ("FOIA/PA") Unit, National Records Center ("NRC"), USCIS. Thereafter, any material that is not exempt will be released to Plaintiff. *Id.* Finally, a *Vaughn* index must then be prepared on all withheld material. *Id.*

I.  **Factual and procedural background**

Plaintiff submitted a FOIA request to USCIS dated January 3, 2022, concerning her A-file as well as other detailed information concerning USCIS's decision to issue a Notice of Intent to Rescind Permanent Resident Status ("NOIR") of the Plaintiff. Ex. A, ¶ 11. By letter dated January 14, 2022, USCIS confirmed receipt of Plaintiff's request and assigned it Request Number NRC 2022010463. *Id.* at ¶ 12. In response to Plaintiff's request, USCIS FOIA personnel determined that based on the information being sought, certain of the records in USCIS's control that were responsive to the request and subject to the FOIA would most likely be maintained in the Electronic Immigration System ("ELIS"), which is a web-based IT solution that streamlines and enhances USCIS's case management and benefits processing operations through automation. *Id.* at ¶ 13. Therefore, on January 14, 2022, ELIS was sent the request for the purposes of searching for responsive records. *Id*. USCIS FOIA personnel also determined through a search in the FOIA Immigration Records System ("FIRST"), it was determined that the Alien file ("A-file") pertaining to Plaintiff was located in the New Orleans District Office. *Id.* at ¶ 14. Therefore, on January 14,

2022, the New Orleans District Office was sent the request for the purposes of searching for responsive records. *Id.*

By letter dated February 22, 2022, USCIS informed Plaintiff that it had fully processed 957 pages responsive to the request and determined that it was releasing 573 pages in full and 196 pages in part. Plaintiff was also notified that 188 pages were being withheld in full. *Id.* at ¶ 15. USCIS informed the Plaintiff that the portions of the pages released in part and in full were being withheld pursuant to 5 U.S.C. § 552 (b)(3), (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) of FOIA. Plaintiff was also provided with administrative appeal rights. *Id*.

Thereafter, on March 31, 2022, Plaintiff filed an administrative appeal of the February 22, 2022, release. *Id.* at ¶ 16. Specifically, Plaintiff appealed the withholding of responsive records and the scope of the search for responsive records. *Id*. By letter dated May 5, 2022, USCIS informed Plaintiff that it had opened PPO2022000913, which concerned the remand for the search for certain information response to Plaintiff's request. *Id.* at ¶ 17. Thereafter, Defendant adjudicated the administrative appeal and determined that four Receipt files that may be responsive to Plaintiff's request may exist. *Id.* at ¶ 18. Receipt files are files that are most commonly used for non-immigrant forms and have temporary value. Receipt files deemed to have permanent value are consolidated into A-files. *Id*. At the time of the request, these files had neither been consolidated into the A-file nor had they been disposed of pursuant to an agency disposition schedule. *Id*. As these files were located at the Harrisburg file facility, this facility was tasked with searching for the Receipt files responsive to Plaintiff's request on May 5, 2022. *Id*.

By letter dated May 9, 2022, USCIS Office of Chief Counsel ("OCC") informed Plaintiff that it was making a supplemental release of 106 pages of responsive material with 16 of those

3

pages being released in full and 90 pages being released in part. *Id.* at ¶ 19. Plaintiff was also notified that USCIS OCC was affirming the remaining withholdings pursuant to 5 U.S.C. § 552 (b)(6), (b)(7)(C) and (b)(7)(E) of FOIA. *Id*. Plaintiff was further notified that the request was being remanded to the NRC for a further search for responsive records. *Id*. Finally, Plaintiff was notified that an additional responsive page was being referred to Immigration Customs Enforcement ("ICE") for its review and direct response to Plaintiff. *Id*. Shortly thereafter, Plaintiff filed this action on August 5, 2022, challenging USCIS's processing of and search for responsive records. Rec. Doc. 1.

By letter dated August 9, 2022, USCIS informed Plaintiff that it had processed 80 additional pages responsive to the request and determined that it was releasing 20 pages in full and 37 pages in part. *Id.* at ¶ 21. Plaintiff was also notified that 23 pages were being withheld in full. *Id*. USCIS informed the Plaintiff that the portions of the pages released in part and in full were being withheld pursuant to 5 U.S.C. § 552 (b)(3), (b)(6), (b)(7)(C) and (b)(7)(E) of FOIA. Plaintiff was also provided with administrative appeal rights. *Id*. On September 9, 2022, USCIS determined that Field Office Directorate ("FOD") and the Fraud Detection and National Security Directorate ("FDNS") may have records responsive to the request. *Id.* at ¶ 22. These two offices were sent the request and tasked with searching for responsive records on that day. *Id*. The FDNS is responsible for safeguarding the integrity of the nation's lawful immigration system by leading agency efforts to combat fraud, detect national security and public safety threats, and maximize law enforcement and Intelligence Community partnerships. *Id.* at ¶ 23. Given the mission and nature of FDNS's work, the USCIS FOIA office felt that FDNS might have documents responsive to the request. *Id*.

FDNS conducted its search for records on September 12, 2022. *Id.* at ¶ 24. FDNS searched the FDNS-DS, which is the FDNS data system for responsive records. *Id.* The search terms were the names of individuals including Plaintiff and others named in her request. *Id*. FDNS located 48 pages of records which were uploaded to the FIRST system on September 16, 2022. *Id*.

FOD oversees and manages the day-to-day operations of the Western Region Office, Central Region Office, Northeast Region Office, Southeast Region Office, the National Benefits Center, the Immigrant Investor Program Office, 16 District Offices and 88 Field Offices located throughout the continental US, Alaska, Hawaii, Puerto Rico, Guam, Saipan and the U.S. Virgin Islands. *Id.* at ¶ 25. Plaintiff's request specifically sought the records of New Orleans Field Office Director Eureka Arties, Christopher Wehrer, and Waheedat (Timi) Sadiq who are all FOD employees. *Id.* The request for their records was tasked on September 9, 2022. *Id.* The FOD Office reached out to the Office of Information of Technology to conduct an electronic email pull of responsive records for these employees by October 11, 2022 and located 564 pages of responsive records which were uploaded into FIRST on October 12, 2022. *Id.* In addition to the electronic email pull, the individual employees conducted personal searches for their records. *Id.* New Orleans Field Office Director Eureka Arties searched her laptop and e-mail archives on September 30, 2022 and found no other records responsive to the request. *Id.* Waheedat Timi Sadiq searched her laptop and email archives on October 4, 2022 and found no other responsive records to the request. *Id.* Christopher Wehrer searched his laptop, e-mail archives and the shared drive agency where records are saved to using the names involved in the Plaintiff's case, receipt numbers involved in her case, as well as Alien Numbers involved in the case and located 13 pages of responsive records, including emails that are duplicate to the responsive records provided by the

OIT search. *Id.* The records were uploaded into FIRST on September 30, 2022. *Id.*

The FDNS and FOD records that have been located are currently being processed and it is expected that the processing of these records will be completed by November 11, 2022. *Id.* at ¶ 26. As there are no other components with USCIS that directly deal with the matters raised in the request, no other USCIS Offices were searched for responsive records. *Id.* at ¶ 27. Following the final release of responsive records, a further declaration with regard to the information that was withheld from the agency's response along with an attached index identifying and describing each document in which information was withheld, specifying the particular exemption under which the information was withheld, and explaining how the exemption applies to the information that was withheld will be completed by December 2, 2022. *Id.* at ¶ 28. Information regarding how non-exempt information was segregated from exempt information and how a foreseeable harm analysis was conducted will be included in the index. *Id*.

## II.     Burden of Proof

### A.     Summary Judgment

Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved. *Wickwire Gavin, P.C. v. U.S. Postal Service*, 356 F.3d 588, 591 (4th Cir. 2004) (citing *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993)) ("FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified."); *accord Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002) ("Summary judgment resolves most FOIA cases."); *Cappabianca v. Commissioner, U.S. Customs Serv.*, 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) (citing *Miscavige*, 2 F.3d at 368) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment"); *Raytheon Aircraft*

*Co. v. U.S. Army Corps of Eng'rs*, 183 F. Supp. 2d 1280, 1281 (D. Kan. 2001) ("FOIA cases . . . are especially amenable to summary judgment because the law, rather than the facts, is the only matter in dispute.").

Summary judgment is proper when, after reviewing the "pleadings, depositions, answers to interrogatories ... [and] affidavits," the court determines that there is no issue of material fact. Fed.R.Civ.P. 56(c). The party seeking summary judgment always bears the initial responsibility for informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the party seeking the summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.

In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980). In a nonjury case, the Fifth Circuit has suggested, but not explicitly adopted, an agency's "more lenient standard for summary judgment." *U.S. Fid. & Guar. Co. v. Plantars Bank & Trust Co.*, 77 F.3d 863, 865 (5th Cir.1996), cited by *Ill. Cent. R.R. Co. v. Mayeux*, 301 F.3d 359, 362 (5th Cir.2002). The Circuit Court has stated that "where the judge is the trier of fact ... he may be in a position to draw inferences without resort to the expense of trial, unless there is an issue of witness credibility." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 273 n. 15 (5th Cir.1987)

7

(quoting *Ala, Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 609-10 (5th Cir.1979)).

      **B.    FOIA Generally – Allocation and Burden of Proof for Summary Judgment**

The essential purpose of FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corporation*, 493 U.S. 146, 149 (1989). "Congress recognized, however, that public disclosure is not always in the public interest." *CIA v. Sims*, 471 U.S. 159, 166-167 (1985). FOIA is designed to achieve a "workable balance between the right of the public to know and the need of the Government to keep information in confidence to the extent necessary without permitting indiscriminate secrecy." *John Doe*, 493 U.S. at 152 (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 6 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2418, 2423). Accordingly, the statute incorporates "nine exemptions which a government agency may invoke to protect certain documents from public disclosure." *Minier v. Central Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996).

The Supreme Court has recognized that the statutory exemptions are intended to have "meaningful reach and application." *John Doe*, 493 U.S. at 152. Indeed, "[a] district court only has <u>jurisdiction</u> to compel an agency to disclose <u>improperly withheld</u> agency records," i.e., records that do "not fall within an exemption." *Minier v. Central Intelligence Agency*, 88 F.3d at 803 (emphasis in original). "Congress did not invite a judicial weighing of the benefits and evils of disclosure on a case-by-case basis," and "[r]equiring an agency to disclose exempt information is not authorized by FOIA." *Id*. (quotations omitted).

The agency may satisfy its burden of proof through the submission of affidavits that identify the documents at issue and explain why they fall under the claimed exemption. These

8

affidavits must be clear, specific and reasonably detailed while describing the withheld information in a factual and non-conclusory manner. *Mavadia v. Caplinger*, 1996 WL 592742, at *1 (E.D. La., Oct. 11, 1996). **"Without evidence of bad faith, the veracity of the government's submission regarding reasons for withholding the documents should not be questioned."** *McQueen v. U.S.*, 264 F.Supp.2d 502, 514 (S.D. Tex. 2003) (*quoting Matter of Wade*, 969 F.2d 241, 246 (7th Cir. 1992))(emphasis added).

### III. Argument

Although Plaintiff has styled her motion as a motion for summary, Plaintiff has not actually provided any factual or legal arguments to support summary judgment. In fact, Plaintiff concedes that there are still genuine issues of material fact in dispute, yet Plaintiff somehow suggests she is entitled to judgment as a matter of law as a result of these disputes. Rec. Doc. 6-2, p. 1 (emphasis in original). Indeed, Plaintiff's motion highlights numerous disputed issues. For example, Plaintiff notes that Defendant withheld hundreds of documents pursuant to FOIA exemptions. Rec. Doc. 6-1, at ¶¶ 9, 14, and 15. However, Plaintiff baselessly asserts these withholdings were "unlawful," alluding that Plaintiff was somehow entitled to a *Vaughn* index during the administrative process.

As the Court is aware, a *Vaughn* index is merely a methodology of indexing withheld documents in FOIA cases. Specifically, an agency will provide an itemized index, correlating each withheld document (or portion) with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification. With regard to the timing of the creation of a *Vaughn* index, it is well settled that a requester is not entitled to receive one during the administrative process. *See, e.g., Schwarz v. United States Dep't of Treasury*, 131 F. Supp. 2d 142, 147 (D.D.C. 2000) ("[T]here is no requirement that an agency provide a . . . '*Vaughn*' index on an initial request for

9

documents."); *Edmond v. United States Attorney*, 959 F. Supp. 1, 5 (D.D.C. 1997) (rejecting, as premature, request for *Vaughn* index when agency had not processed plaintiff's request). Furthermore, courts generally do not require the submission of a *Vaughn* index prior to the time at which defendant's dispositive motion is filed; this standard practice is based upon the need to maintain an orderly and efficient adjudicative process in FOIA cases, and upon the practical reality that some form of affidavit, declaration, or index virtually always accompanies the defendant agency's motion for summary judgment. *See, e.g., Tannehill v. Dep't of the Air Force*, No. 87-1335, slip op. at 1 (D.D.C. Aug. 20, 1987) (noting that standard practice is to await filing of agency's dispositive motion before deciding whether additional indexes will be necessary).

Moreover, a *Vaughn* index is not required in every case. "[C]ourts have not universally required agencies to produce detailed *Vaughn* indexes in response to every FOIA request." *Wright v. OSHA*, 822 F.2d 642, 645–46 (7th Cir.1987); *see also Minier v. CIA*, 88 F.3d 796, 804 (9th Cir.1996). "'When ... a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile.'" *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir.1998) (citing *Church of Scientology v. IRS*, 792 F.2d 146, 152 (D.C.Cir.1986)). Furthermore, Defendant need not produce a *Vaughn* index if sufficiently detailed affidavits or declarations will achieve the same purpose. *See Snyder v. CIA*, 230 F.Supp.2d 17, 21–22 (D.D.C.2002).

Based on the foregoing, Plaintiff is correct – there are material issues in dispute. However, contrary to Plaintiff's argument, these disputes require the Court to deny Plaintiff's motion. Alternatively, the Court could deny Plaintiff's motion without prejudice as premature. Despite the curious nature of Plaintiff's motion, Plaintiff's tactic is simply to force Defendant to file their own

summary judgment, along with submitting a search declaration and a *Vaughn* index, as if to requiring Defendant to meet the burden of proof as a movant. Defendant does agree with Plaintiff that Defendant ultimately bears the burden of proof for withholdings in FOIA matters, but Plaintiff fails to understand the burden and concepts of a non-moving party. The United States Supreme Court has described the burden as follows:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, *323 there can be **"no genuine issue as to any material fact,"** since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...." **2553 *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552-2553 (1986). Essentially, a burden-shifting motion is appropriate once all issues are joined and discovered. Indeed, Fed. R. Civ. Pro. 56 guards against such premature motions. Under Fed. R. Civ. Pro. 56(d), if a party opposing a motion for summary judgment shows, by affidavit or declaration, that for "specified reasons" it cannot present facts essential to justify its opposition, the Court may deny the motion. As Judge Fallon recently noted, this "Rule is designed to safeguard against a premature or improvident grant of summary judgment." *Bridges v. Guy*, 2022 WL 2438623, at *3 (E.D.La.2022). Subdivision (b) of the Advisory Committee Notes for the 2010 amendments for Federal Rule of Civil Procedure 56 also recognized this prejudicial timing concern and noted,

> Although the rule allows a motion for summary judgment to be filed at the commencement of an action, in many cases the motion will be premature until the

nonmovant has had time to file a responsive pleading or other pretrial proceedings have been had. Scheduling orders or other pretrial orders can regulate timing to fit the needs of the case.

Timing is more paramount in FOIA cases, wherein summary judgment is the sole procedural vehicle by which these cases are routinely resolved. As previously presented to the Court, the timing for summary judgment in FOIA matters is after all documents at issue have been properly identified. *Wickwire Gavin, P.C. v. U.S. Postal Service*, 356 F.3d 588, 591 (4th Cir. 2004) (*citing Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993)) ("FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified."); *accord Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002) ("Summary judgment resolves most FOIA cases."); *Cappabianca v. Commissioner, U.S. Customs Serv.*, 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) (*citing Miscavige*, 2 F.3d at 368) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment").

Defendant has provided a very detailed declaration, which details the processing background and current status of Plaintiff's request. Ex. A. Moreover, Defendant notes in the declaration that all agency actions needed for summary judgment should be complete by December 2, 2022. *Id.* at ¶ 28. Therefore, the undersigned will be in a position to file a motion for summary judgment shortly thereafter. Accordingly, the Court should deny Plaintiff's motion without prejudice and set a briefing at the Court's status conference on November 3, 2022. Rec. Doc. 10.

The District Court for the District of Columbia, where the majority of FOIA cases are litigated, courts routinely opt for a briefing schedule, rather than the normal scheduling order, to regulate the needs of a FOIA case. *See, e.g.,* Exhibit B, sample Standing Order for Civil Cases by

Chief Judge Beryl A. Howel, D.D.C. The sample standing order logically averts the premature motion as presented in this case:

> *FOIA Cases*: In any action arising under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, counsel for the parties shall jointly prepare and submit a report to the Court, **within fourteen days** after **any** defendant files an answer, indicating whether the agency has made a final determination "whether to comply" with any FOIA request at issue, § 552(a)(6)(A)(i).
>   a. If such a final determination has been made, the parties shall propose a schedule for the filing of dispositive motions.
>   b. If no final determination has been made, the joint report shall contain (1) an estimate provided by the defendant of when the agency expects a final determination to be made; (2) a proposed schedule for production of responsive records; and (3) a proposed schedule for the filing of dispositive motions.

Ex. B, p. 2 (emphasis in original). Ms. Munita's declaration essentially fulfills the reporting requirement of this standing order. By denying Plaintiff's instant motion and setting a briefing schedule in accordance with the update described in the declaration, the Court can assure that all issues are joined and resolved in a single round of motion practice. The alternative leads to a litany of motions being filed in a disjointed manner, causing undue work and hardship for the Court.

**IV.   Conclusion**

For the foregoing reasons, Defendant prays that the Court deny Plaintiff's motion for summary judgment.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY

   *s/ Brock D. Dupre*
**BROCK D. DUPRE**
Assistant United States Attorney
LA Bar Roll No. 28563
650 Poydras Street, Suite 1600
New Orleans, Louisiana  70130
Telephone:  (504) 680-3005
Facsimile:  (504) 680-3184
Brock.dupre@usdoj.gov