UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LANIE McCANN** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO. 22-2502** |
| **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES** | * | **SECTION "H"** |
| | * | **MAGISTRATE 2** |

\* \* \* \* \* \* \* \* \*

**REPLY MEMORANDUM IN SUPPORT OF**
<u>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

**MAY IT PLEASE THE COURT:**

Defendant, United States Citizenship and Immigration Services (USCIS), through the undersigned Assistant United States Attorney, respectfully submits this reply memorandum in support of its Motion for Summary Judgment, Rec. Doc. 19. First, Plaintiff's opposition to Defendant's motion primarily consists of 12 pages of black letter law and cited caselaw with virtually no analysis of how the caselaw is applicable to facts of the instant case. *See* Rec. Doc. 20-2. More puzzling, although the Court's Briefing Order demands Plaintiff's opposition be filed in compliance with LR 56.2, which requires Plaintiff to file a "short and concise" statement of material facts in dispute, Plaintiff has filed **34 pages** of disputed "facts." Rec. Doc. 20-1. Moreover, Plaintiff's 34 pages of "facts" include legal citation, long string cites, statutory citation, and legal argument. However, regardless of the curious nature of the filing, Defendant's reply will attempt to simplify and refocus the Court on specific factual/legal disputes.

Initially, it is important to note that nowhere in Plaintiff's opposition or in her lengthy statement of contested facts does Plaintiff argue that the 534 pages of documents detailed in

1

Defendant's *Vaughn* index were improperly withheld either in whole or in part. Indeed, Plaintiff does not oppose any specific exemption noted on the *Vaughn* index and, in fact, Plaintiff does not assert that any of the exemptions were improperly used for any specific document. Rather, Plaintiff's opposition focuses on duplicate documents, segregability, adequacy of the search, and attempts to confuse the total number of pages responsive to the subject FOIA request.

### A. USCIS properly withheld duplicates.

Plaintiff is correct that two sections in this district have held that an agency defendant cannot withhold duplicates under FOIA. However, the same does not make withholding duplicates "patently unlawful" as there is no such thing as "the law of the district" despite two other sections' decisions. Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same district, the prior "resolution of those claims does not bar reconsideration by this Court of similar contentions … The doctrine of stare decisis does not compel one district court judge to follow the decision of another." *State Farm Mutual Automobile Insurance Co. v. Bates*, 542 F.Supp. 807, 816 (N.D.Ga.1982); *see also Young v. Kelly*, 2020 WL 8571662, at *4 (E.D. La. Dec. 21, 2020).

In the cases upon which Plaintiff relies for the processing and release of duplicates, both courts reached their decisions on the release of duplicate material by interpreting the statutory text of FOIA (finding no language in the statute for withholding duplicate material); however, neither decision cites illustrative caselaw in support of this position. Moreover, a duplicate is not a record under the United States Code. Specifically, 44 U.S.C. § 3301(a)(1)(B)(ii), states that federal records do not include "duplicate copies of records made for convenience." The United States Supreme Court has relied on this guidance in construing what is, indeed, a federal record

2

for FOIA. *See Forsham v. Harris*, 445 U.S. 169, 183 (1980)("Although Congress has supplied no definition of agency records in the FOIA, it has formulated a definition in other Acts. The Records Disposal Act, in effect at the time Congress enacted the Freedom of Information Act, provides […] threshold requirement[s] for agency records.").

Unfortunately, there is limited caselaw that discusses withholding of duplicates ostensibly because ordering the release of duplicate material is waste of government resources. One of the few cases the undersigned found somewhat addressing this issue is *Kishore v. DOJ*, 2008 WL 4853413 (D.D.C. 2008). In *Kishore* the Court stated that "withholding of duplicates of five released pages is immaterial to the FOIA claim because 'once all requested records are surrendered, federal courts have no further statutory function to perform.'" *Id*. at p. 1 (citing *Perry v. Block*, 684 F.2d 121, 125 (D.C.Cir. 1982). Although *Kishore* isn't dispositive of the issue, it's guidance suggests that withholding duplicates is appropriate.

Moreover, USCIS has declared that it processes hundreds of thousands of FOIA requests each year - 302,698 requests in FY 2022 to be exact. *See* Exhibit A, Second Supplemental Declaration of Cynthia Munita. Not surprisingly, it is already a monumental task to address each FOIA request. Therefore, it is, and has been, the standard operating procedure of USCIS to not process duplicative pages as FOIA requesters already have these pages and the time taken to process these pages numerous times is better used to process the hundreds of thousands of other pending requests. *Id.* Nonetheless, USCIS, in their discretion, will release duplicates to Plaintiff as noted in Munita's most recent declaration. *Id.*

**B. USCIS has accounted for and processed all responsive documents.**

Turning to the "confusion" of the total number of pages at issue. Admittedly, due to supplemental releases, it is understood how there could be a potential misunderstanding on the total number of pages at issue. However, Plaintiff conflates total number of "potentially responsive" pages to pages deemed responsive by USICS FOIA division. *Id.* For clarification, 678 pages were released in full, 357 were released in part and 177 were withheld in full and all pages are accounted for in the *Vaughn* index. *Id.* Additionally, 16 pages were referred to ICE pursuant to agency regulations, FOIA law and internal DHS guidance.[1]

Some of these pages were processed in the original processing of Plaintiff's FOIA request and later re-examined in her appeal and/or in the preparation of the *Vaughn* index. Ex. A. Thus, the way to account for all pages is by the numbers provided in Paragraph 6 of Munita's recent declaration and not by a running count of the various releases of material to Plaintiff as this would double or triple count some of the responsive pages. *Id.*

Moreover, Munita's October 20, 2022 declaration described the processing of records for Plaintiff up to the date of that request and was based on the Final Action Letters sent to Plaintiff and attached as Exhibits to that declaration. Ex. A. That declaration also described the search for and status of records that had not yet been processed by the FOIA Office. *Id.* Munita stated that a certain amount of responsive material had been located and would soon be released to Plaintiff. At that time, Munita called these pages responsive, but such documents are better referred to as *potentially* responsive since these documents were not yet reviewed by the FOIA Office, which

---

[1] Plaintiff argues that he has not received any response concerning the documents referred to ICE. This is simply incorrect. Therefore, Defendant attaches the response letter sent to Plaintiff from ICE concerning the referred material. Exhibit B, ICE Response to Plaintiff dated May 19, 2022. Additionally, to fully resolve this issue, Defendant has attached the referred material and re-releases the same herein. *Id.*

has the actual responsibility of determining if the located records are actually responsive to the FOIA request. *Id.* Munita's description of those documents was based only on what the offices that conducted the searches reported to the FOIA Office. *Id.*

Munita's November 30, 2022 declaration, which gave the final descriptions of records being responsive, was based on the FOIA Office's actual review of those documents. Ex. A. Upon review of these documents, it was determined that numerous pages were not responsive to the request of Plaintiff as they were erroneously provided to the FOIA Office following the search for records as they concerned other individuals who were represented by Plaintiff's counsel in matters totally unrelated to matters related to Plaintiff. *Id.* Accordingly, these pages were not processed as they were not responsive to Plaintiff's request.[2] Nonetheless, all pages responsive to Plaintiff's FOIA request have been processed and accounted for by USCIS.

**C. USCIS properly conducted a segregability test.**

Plaintiff makes the blanket argument that USCIS failed to conduct a proper segregability analysis merely because documents were withheld in full. Such argument fails on its face. Plaintiff fails to concede that USCIS withheld 357 pages in part. Such action clearly indicates that the records have been reviewed and determinations made as to what portions could be released and what portions needed to be withheld. *See* Ex. A-A. Moreover, it is apparent from the level of detail throughout the agency's declaration that it has carefully reviewed each document individually and considered the possibility of redacting and releasing rather than withholding documents. Furthermore, USCIS declarations specifically state "all segregable information was released." *See* Rec. Docs. 11-1 and 19-2. In sum, USCIS declaration and

---

[2] Regardless, even if processed, these non-responsive pages would be withheld in full and protected pursuant to FOIA Exemption 6 as described in paragraphs 19-20 of Munita's November 30, 2022, declaration.

*Vaughn* index adequately demonstrate that all reasonably segregable, non-exempt information has been disclosed.

### D. The search performed by USCIS was adequate.

Finally, USCIS has illustrated that it has conducted an adequate search for documents in response to Plaintiff's FOIA request. Further, it doesn't appear Plaintiff actually contests the adequacy of the search, but, rather, puts at issue Defendant's description of the search conducted. Despite Plaintiff's assertions, Defendant need not provide a hyper-detailed affidavit. Rather, search affidavits must be clear, specific and "reasonably detailed." *Mavadia v. Caplinger*, 1996 WL 592742, at *1 (E.D. La., Oct. 11, 1996). The D.C. Circuit provides direct analysis on this issue:

> Appellant's challenge to the adequacy of the government affidavits is, we believe, based on a misreading of these FOIA precedents. Neither *Weisberg* nor *Founding Church of Scientology* demands in every FOIA case that the affidavits of the responding agency set forth with meticulous documentation the details of an epic search for the requested records. Rather, in the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA. In considering a challenge to an agency's retrieval procedures, a reviewing court must thus determine whether the materials submitted by the agency satisfactorily demonstrate the apparent adequacy of the search conducted. Where the agency's responses raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory, summary judgment in the government's favor would usually be inappropriate. *See Exxon Corp. v. FTC*, 466 F.Supp. 1088, 1094 (D.D.C.1978), aff'd, 663 F.2d 120 (D.C.Cir.1980).

*Perry v. Block*, 684 F.2d at 126.

The Munita declarations demonstrate through detailed, non-conclusory averments that, in this case, USCIS engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested." *Oglesby*

*v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Specifically, the Munita declarations describe in explicit detail the numerous databases, field offices, departments and units that were searched, as well as describe searches by individual employees. *See* Rec. Docs. 11-1 and 19-2. Such detailed search descriptions establish a more than adequate search for responsive records.

For the foregoing reasons and for the reasons addressed in Defendant's memorandum in support of its motion for summary judgment, Defendant prays that the Court grant Defendant's motion for summary judgment, dismissing Plaintiff's claims at her cost.

Respectfully submitted,

DUANE A. EVANS
UNITED STATES ATTORNEY

  *s/ Brock D. Dupre*
**BROCK D. DUPRE**
Assistant United States Attorney
LA Bar Roll No. 28563
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3005
Facsimile: (504) 680-3184
Brock.dupre@usdoj.gov