UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LANIE McCANN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-2502** |
| **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES** | **SECTION: "H"** |

### ORDER AND REASONS

Before the Court is Defendant United States Citizenship and Immigration Services's Motion for Summary Judgment (Doc. 19). For the following reasons, this Motion is **GRANTED IN PART** and **DENIED IN PART.**

### BACKGROUND

Plaintiff Lanie McCann submitted a Freedom of Information Act ("FOIA") request to United States Citizenship and Immigration Services ("USCIS") on January 3, 2022. In her request, Plaintiff sought information regarding USCIS's decision to issue a Notice of Intent to Revoke ("NOIR") Permanent Resident Status. In February 2022, USCIS informed Plaintiff that it had processed her request and released 573 pages in full, 196 pages in part, and withheld 188 pages in full pursuant to 5 USC § 522(b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) ("the February Release"). Plaintiff argues that 384 pages were unlawfully withheld, either in full or in part, and administratively appealed on March 31, 2022. As a result, USCIS Office of Chief Counsel ("OCC") released an additional 106 pages, with 16 of those pages released in

1

full and 90 released in part. Plaintiff alleges that these 90 pages were unlawfully withheld in part. USCIS OCC also affirmed the February Release withholdings pursuant to 5 USC § 522 (b)(6), (b)(7)(C), and (b)(7)(E). USCIS OCC also notified Plaintiff that the request was being remanded to the National Records Center ("NRC") for further searching.

In August 2022, USCIS informed Plaintiff that it processed 80 additional pages, releasing 20 in full, 37 in part, and withholding 23 pages in full pursuant to 5 USC § 522(b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) ("the August Release"). Plaintiff asserts that 60 pages were unlawfully withheld, either in full or in part.

USCIS later determined that the Field Office Directorate ("FOD") and the Fraud Detection and National Security Directorate ("FNDS") may have responsive records, as Plaintiff's FOIA request specifically sought records of FOD employees Director Eureka Arties, Christopher Wehrer, and Waheedat Sadiq. The Office of Information of Technology ("OIT") conducted an electronic email pull of these employees' records, and these employees also conducted a search of their own personal records for documents responsive to Plaintiff's request. In November 2022, USCIS released records located by FDNS, FOD, and OIT. These offices located 625 pages of additional material, releasing 53 pages in full, 119 pages in part, and withholding 24 pages in full pursuant to 5 USC § 522(b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E) ("the November Release"). Additionally, 429 pages of original 625 were found to be outside the scope of the request or duplicates of pages already released. Plaintiff alleges that 143 pages were unlawfully withheld, either in full or in part, and that duplicates were unlawfully withheld under FOIA. Finally, in preparation for the Motion, USCIS determined it could make a discretionary release of six pages previously withheld.

In summary, 678 pages were released in full, 357 were released in part, and 177 were withheld in full.[1] Plaintiff filed this lawsuit on August 5, 2022, challenging USCIS's processing of and search for responsive records under FOIA. Now before the Court is USCIS's Motion for Summary Judgment. Plaintiff opposes.

## LEGAL STANDARD

Summary judgment is the preferred method of resolving FOIA cases.[2] In most litigation, "a motion for summary judgment is properly granted only if there is no genuine issue as to any material fact."[3] "The FOIA context is unusual, however, because the threshold question in any FOIA suit is whether the requester can even see the documents the character of which determines whether they can be released."[4] "Summary judgment is available to the defendant in a FOIA case when the agency proves that it has fully discharged its obligations under FOIA, and there is no genuine issue of material fact, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester."[5]

"Courts generally will grant an agency's motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under exemptions."[6] Accordingly, the government bears the burden of proving that the withheld documents fall within an enumerated exemption.[7] The

---

[1] Doc. 23 at 4.
[2] Evans v. U.S. OPM, 276 F. Supp. 2d 34, 37 (D.C. Cir. 2003).
[3] Cooper Cameron Corp. v. U.S. Dep't of Lab., Occupational Safety & Health Admin., 280 F.3d 539, 543 (5th Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).
[4] *Id.*
[5] Mavadia v. Caplinger, No. CIV. A. 95-3542, 1996 WL 592742, at *1 (E.D. La. Oct. 11, 1996).
[6] *Cooper Cameron Corp.*, 280 F.3d at 543.
[7] U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 141 n.2 (1989); see also 5 U.S.C. § 552(a)(4)(B) ("the burden is on the agency to sustain its action").

3

agency may carry its burden of proof by submitting specific and reasonably detailed affidavits that identify the documents in question and explain the applicability of the exemption.[8] Absent evidence of bad faith, the truthfulness of the agency's affidavits should not be questioned.[9]

FOIA requires a federal agency, upon request, to disclose records in its possession, unless the requested documents are clearly exempt from disclosure by the statute.[10] The nine exemptions are exclusive and should be construed narrowly.[11] These exemptions protect interests such as personal privacy, national security, and law enforcement. FOIA was "enacted to facilitate public access to Government documents."[12] The purpose of the statute was to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."[13] Thus, there is a strong presumption in favor of disclosure.[14]

## LAW AND ANALYSIS

Defendant requests summary judgment, stating that it has carried its burden of showing it has processed and released all responsive documents, barring those properly withheld under the articulated FOIA exemptions.

---

[8] *Mavadia,* 1996 WL 592742, at *1 ("These affidavits must be clear, specific and reasonably detailed while describing the withheld information in a factual and nonconclusory manner.").

[9] Matter of Wade, 969 F.2d 241, 246 (7th Cir.1992) ("Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned."); Hemenway v. Hughes, 601 F. Supp. 1002, 1004 (D.D.C.1985) (in FOIA cases, summary judgment does not hinge on the existence of a genuine issue of material fact, but rather on the basis of agency affidavits if they are reasonably specific, demonstrate logical use of exemptions, and are not controverted by evidence in record or bad faith.).

[10] Dasilva v. USCIS, No. 13-13, Doc. 68 (E.D. La. Sept. 19, 2013) (first citing 5 U.S.C. § 552 (a)-(b); and then citing NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 136 (1975)).

[11] Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976); Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973).

[12] U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991).

[13] *Rose*, 425 U.S. at 361.

[14] *Ray*, 502 U.S. at 173 (citing *Rose*, 425 U.S. at 361).

Plaintiff opposes, arguing that USCIS has not complied with its obligations under FOIA. Plaintiff raises several issues, namely (1) USCIS improperly withheld duplicates, (2) USCIS, via United States Immigration and Customs Enforcement ("ICE"), unlawfully withheld 17 pages of responsive information, (3) USCIS did not conduct a legally adequate search for all responsive agency information, and (4) USCIS did not segregate and produce nonexempt responsive information. The Court will address each issue individually.

    *a. Withholding of Duplicates*

Plaintiff alleges that USCIS improperly withheld duplicates. Although USCIS maintains that the withholding of duplicates is permissible, it has decided, in its discretion, to release all duplicates to Plaintiff.[15] Plaintiff's argument regarding the release of duplicates, thus, is moot.

    *b. Documents Referred to ICE*

Plaintiff argues that USCIS, through ICE, unlawfully withheld 17 pages of responsive information.[16] USCIS states that it referred the pages at issue, given the agencies' similar nature of immigration enforcement and disputes that the information was withheld.[17] USCIS has attached the letter sent to Plaintiff from ICE regarding the material. USCIS also states that it re-released the referred material to Plaintiff and attached the pages at issue.[18]

---

[15] Doc. 23 at 3.

[16] Doc. 20-1 at 8, 10. Plaintiff alleges that 16 pages of material were referred in the first production response, and one additional page referred Defendant's second production response.

[17] Plaintiff does not argue that the referral was improper, however the Court notes that the referral was for a small number of documents (pages 522–23, 525, 536–37, 538–40, 541–43, 609–11, 709–10), the process was prompt, and that the documents, although redacted, were produced to Plaintiff by ICE. *See* Gahagan v. U.S. Dep't of Justice, No. 13-5526, 2014 WL 2158479, at *4 (E.D. La. May 23, 2014) (stating that referral of documents to ICE was proper, and there was "no error in EOIR's determination that ICE should have an opportunity to review and assert any exemptions believe appropriate to the document's disclosure).

[18] Doc. 23-2.

There is a discrepancy, however. USCIS's *Vaughn* index explicitly states that 17 pages were referred, 16 initially and one page referred later. ICE's *Vaughn* index only addresses the first 16 pages. Thus, the Court will address the first 16 pages referred to ICE, and later address the seventeenth page which is not discussed in ICE's declaration or *Vaughn* index.

    i.    <u>The Sixteen Pages Referred on April 13, 2022</u>

USCIS referred sixteen pages to ICE on April 13, 2022 and argues that the referral was proper. Plaintiff argues that USCIS, via ICE, unlawfully withheld the 16 pages in full. In its communications to Plaintiff, ICE identifies the documents at issue, indicated which exemptions applied, and labelled each redacted section with the FOIA exemption used to withhold the information.[19] USCIS also submitted the Declaration of Fernando Pineiro, the FOIA Director of ICE, which describes in detail the FOIA exemptions and their application to the records at issue, and provides a *Vaughn* index. Mr. Pineiro's declaration also states that a "line by line review was conducted to identify information exempt from disclosure," and that "non-exempt portions were released."[20] Based on Mr. Pineda's declaration and the detailed *Vaughn* index, the Court finds that USCIS has met its burden with regards to the first 16 pages referred to ICE.

    ii.    <u>The Seventeenth Page Referred on May 9, 2022</u>

USCIS's *Vaughn* index and its Motion state that 17 pages were referred to ICE (pages 522–23, 525, 536–37, 538–40, 541–43, 609–11, 709–10). ICE's *Vaughn* index, however, only discusses and applies exemptions to 16 pages of information. Plaintiff contends that "Defendant has not cited any lawful FOIA

---

[19] *Cooper Cameron Corp.*, 280 F.3d at 543 ("Thus, in a FOIA case, a court 'generally will grant an agency's motion for summary judgment only if the agency identifies the documents at issue and explains why they fall under exemptions.'").

[20] Doc. 19-4 at 6.

6

exemption . . . for completely withholding all of the information from the one referred page . . . not even a blank page with the legal redaction citations was produced."[21] Indeed, neither USCIS nor ICE's *Vaughn* index discusses the one additional page of referred information. Accordingly, the Court **ORDERS** USCIS to produce a supplemental declaration addressing this page, and whether it is withheld subject to a lawful FOIA exemption or whether it may be produced to Plaintiff.

    c. *Adequacy of Searches*

USCIS argues that, as a matter of law, it has conducted a legally adequate search. Plaintiff disagrees. "An agency may demonstrate that it conducted an adequate search [for documents] by showing that it used 'methods [that] can be reasonably expected to produce the information requested.'"[22] "The issue is not whether other documents may exist, but rather, whether the search for undisclosed documents was adequate."[23] The agency may show it conducted a legally adequate search by submitting specific and reasonably detailed affidavits that identify the documents in question and explain the applicability of the exemption.[24] Absent evidence of bad faith, the truthfulness of the agency's affidavits should not be questioned.[25] "The required level of detail is satisfied if the agency affidavit 'set[s] forth the search

---

[21] Doc. 20-1 at 11.
[22] *Batton*, 598 F.3d at 177.
[23] *In re* Wade, 969 F.2d 241, 249 n.11 (7th Cir. 1992).
[24] *Mavadia,* 1996 WL 592742, at *1 ("These affidavits must be clear, specific and reasonably detailed while describing the withheld information in a factual and nonconclusory manner.").
[25] *In re Wade*, 969 F.2d at 246 ("Without evidence of bad faith, the veracity of the government's submissions regarding reasons for withholding the documents should not be questioned."); Hemenway v. Hughes, 601 F. Supp. 1002, 1004 (D.D.C.1985) (in FOIA cases, summary judgment does not hinge on the existence of a genuine issue of material fact, but rather on the basis of agency affidavits if they are reasonably specific, demonstrate logical use of exemptions, and are not controverted by evidence in record or bad faith.).

terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched.'"[26]

"There is no requirement that an agency search every record system."[27] However, "[t]he agency cannot limit its search to only one or more places, if there are additional sources that are likely to turn up the information requested."[28] If the agency carries its burden to show the search was reasonable, the burden shifts to the plaintiff to show the search was not conducted in good faith.[29]

To demonstrate the adequacy of its search, USCIS submitted the affidavit of Cynthia Munita, the Chief FOIA Officer in the FOIA and Privacy Act Unit, NRC, USCIS, within the United States Department of Homeland Security. Regarding the February Release, Ms. Munita's October 20, 2022 declaration states that "based on the information sought, certain of the records . . . would most likely be maintained in the Electronic Immigration System."[30] She also states that the New Orleans District Office was sent the request to search its records after USCIS personnel determined that Plaintiff's A-file was located there. The affidavit, however, does not explain how the search of ELIS or the New Orleans District Office was conducted. It does not explain who searched ELIS or the New Orleans District Office, or whether the search included both paper and electronic files.[31] It also does not include the search

---

[26] *Gahagan*, 2014 WL 2158479, at *4.
[27] *Oglesby*, 920 F.2d at 68.
[28] Rosenberg v. United States Dept. of Immigration and Customs Enforcement, 959 F. Supp. 2d 61, 70–71 (D.D.C. Aug. 11, 2013) (quoting *Valencia–Lucena*, 180 F.3d at 326 (citation omitted)).
[29] Moore v. Aspin, 916 F. Supp. 32, 35 (D.D.C. 1996).
[30] Doc. 19-2 at 5.
[31] *Oglesby*, 920 F.2d at 68 ("Nor does the affidavit identify the terms searched or explain how the search was conducted.").

terms used, or what locations were searched.[32] As a result, the declaration lacks the required level of detail.

Ms. Munita's declarations suffer from similar deficiencies when discussing the search of the Harrisburg file facility, the NRC, the FOD, the FNDS, the OIT, and the employees' searches of their personal computers. Specifically, when discussing the search of the FNDS, she states that the "search terms were the names of individuals including Plaintiff and others named in her request."[33] The declaration, however, does not state who conducted the search. Regarding the FOD search, the declaration states that the OIT conducted "an electronic email pull of responsive records," but does not state how this search was conducted, whether other records were searched, the search terms used, or who at FOD or OIT conducted the search.[34] Ms. Munita's declaration as to the searches conducted by Eureka Arties and Waheedat Timi Sadiq only state that the employees "searched [their] laptop[s] and email archives," without identifying the search terms used.[35] Contrastingly, the declaration states that Christopher Wehrer "searched his laptop, e-mail archives, and the shared drive agency . . . using the names involved in the Plaintiff's case, receipt numbers involved in her case, as well as Alien numbers."[36] The declaration as it pertains to Wehrer's search is sufficient. Munita's declaration as to searches of all other locations, however, is insufficient to allow the Court to determine if the search was legally adequate.

---

[32] *Gahagan*, 2014 WL 2158479, at *5 (holding that the declarations submitted were insufficient because they "did not explain the nature of the search conducted, including whether both electronic and paper files were searched, or who conducted the searches").
[33] Doc. 19-2 at 8.
[34] *Id.*
[35] *Id.* at 9.
[36] *Id.*

9

Plaintiff also argues that the scope of the search was insufficient. The Court agrees and finds the scope of the search to be insufficient to carry Defendant's burden of showing that all components that likely have responsive documents were searched. USCIS submits Ms. Munita's declaration which states that "[a]s there are no other components with USCIS that directly deal with the matters raised in the request, no other USCIS Offices were searched for responsive records."[37] Although the offices searched are those that deal *directly* with the matters in the requests, other USCIS Offices which *indirectly* deal with the matters may also likely have responsive documents.[38] While the Court notes that there is "no requirement that an agency search every record system," a search is not reasonable "if there are additional sources that are likely to turn up the information requested."[39] Thus, Ms. Munita's declaration also fails to address whether any other components of USCIS likely have documents, regardless of whether they deal directly with the matters in the request.

### d. Segregability

USCIS argues that it conducted a legally adequate segregability analysis and released all portions which did not fall under a FOIA exemption. Plaintiff, however, argues that the segregability analysis was inadequate. In redacting information from the documents, USCIS asserted the FOIA exemptions set forth in § 522(b)(3), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

---

[37] *Id.*
[38] *See Gahagan*, 2014 WL 2158479, at *4 (reiterating that a "reasonable search should account for components that 'likely' have responsive documents, but fall short of 'most likely status.'")
[39] *Oglesby*, 920 F.2d at 68; Rosenberg v. United States Dept. of Immigration and Customs Enforcement, 959 F. Supp. 2d 61, 70–71 (D.D.C. Aug. 11, 2013) (quoting *Valencia–Lucena*, 180 F.3d at 326).

Exemption 3 states that FOIA does not apply to matters which are "specifically exempted from disclosure by statute."[40] USCIS relies on Section 222(f) of the Immigration and Nationality Act, which has been held to qualify as a withholding statute under § 552(b)(3), to withhold portions of pages 733, 735, and 819 of the February Release.[41] USCIS states that these were "documents from the State Department that pertain to the issuance or refusal of a visa to enter the United States, which is exempt from disclosure under Exemption 3."[42] USCIS also relies upon 49 U.S.C. § 114 to withhold pages 565 of the February Release and pages 34 and 41 of the August Release under Exemption 3, which prohibits disclosure of certain security information.[43]

Exemption 5 allows the withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[44] Exemption 5 also protects the attorney-client privilege. USCIS asserted Exemption 5 in withholding documents which pertain to its decision-making process, and documents which reflect "recommendations and deliberations comprising various processes by which USCIS decisions on Plaintiff's Notice of Intent to Revoke . . . was decided upon and formulated."[45] The attorney client privilege was also invoked to protect emails and documents from agency counsel and clients discussing Plaintiff's NOIR.

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted

---

[40] 5 USC § 552(b)(3).
[41] Medina-Hincapie v. Dep't of State, 700 F.2d 737, 743 (D.C. Cir. 1983) (holding that "section 222(f) qualifies as a withholding statute under Exemption 3").
[42] Doc. 19-1 at 12–13.
[43] Doc. 19-1 at 13.
[44] 5 USC §552 (b)(5).
[45] Doc. 19-1 at 15.

11

invasion of personal privacy."[46] USCIS invoked Exemption 6 to withhold information identifying third parties who did not consent to release. This information includes "name and documents for certain individuals and personal privacy information about third parties such as tax returns, photos, and identification cards and numbers."[47] Exemption 6 was also invoked to protect names, e-mail addresses, and phone numbers for USCIS employees who did not consent to release.

Exemption 7(C) protects documents compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."[48] USCIS invoked this exemption to protect personal information regarding the names of employees assigned to law enforcement matters in the documents that were responsive to Plaintiff's FOIA request, arguing that the names and contact information of these employees does not affect how the government is carrying out its immigration functions.

Exemption 7(E) allows for the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."[49] USCIS withheld documents pursuant to exemption 7(E) where the release would disclose techniques and procedures for law enforcement investigation that would reasonably risk circumvention of the law.[50]

---

[46] 5 USC 552(b)(6).
[47] Doc 19-1 at 17.
[48] Doc. 19-1 at 18.
[49] Blackwell v. F.B.I., 646 F.3d 37, 40 (D.C. Cir. 2011) (citing 5 USC § 552(b)(7)).
[50] Doc. 19-1 at 20.

USCIS submitted a *Vaughn* index describing the application of each exemption to each withheld section. The *Vaughn* index is detailed and meticulous. Plaintiff does not contest the invocation of certain exemptions to certain pages, and only states that USCIS "did not segregate and produce the nonexempt responsive withheld information to Plaintiff as mandated by FOIA."[51] On this record, the Court finds that USCIS's segregability analysis is sufficient to carry its burden that all responsive, non-exempt information was produced.

## CONCLUSION

Based on the foregoing, USCIS's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART. IT IS ORDERED** that on or before August 25, 2023, supplemental declarations taking into account the shortcomings identified herein be provided to the Court and Plaintiff.

New Orleans, Louisiana this 24th day of July, 2023.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[51] Doc. 20-1 at 7.